UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| BONNIE HENDRICKS, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>TOYOTA MOTOR CORPORATION, and TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>       Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## <u>CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   PARTIES ..............................................................................................................2

    A.    Plaintiff ....................................................................................................2

        1.    Bonnie Hendricks........................................................................2

    B.    Defendants ...............................................................................................4

III.  JURISDICTION ...................................................................................................5

IV.   VENUE .................................................................................................................5

V.    FACTUAL ALLEGATIONS ................................................................................6

    A.    Toyota's History of Defective Hybrid Braking Systems........................6

    B.    The Defective Hybrid Braking Systems in the Class Vehicles.............12

    C.    Toyota Has Manipulated Its Warranty To Minimize Its Obligation To Fix the Braking Defect In Affected Vehicles....................................................32

VI.   TOLLING OF THE STATUTE OF LIMITATIONS...........................................34

    A.    Discovery Rule Tolling..........................................................................34

    B.    Fraudulent Concealment Tolling ...........................................................35

    C.    Estoppel..................................................................................................35

VII.  CLASS ALLEGATIONS.....................................................................................36

    A.    Claims Brought on Behalf of the Nationwide Class.............................39

COUNT I  VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS WARRANTY ACT .................................................................39

    B.    Claims Brought on Behalf of the Ohio Subclass ..................................41

COUNT II_VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE § 1345.01, *ET SEQ.*) ..........................................................41

COUNT III  BREACH OF CONTRACT  (BASED ON OHIO LAW) .......................................45

COUNT IV  FRAUDULENT CONCEALMENT (BASED ON OHIO LAW).............................46

COUNT V  UNJUST ENRICHMENT.........................................................................................50

REQUEST FOR RELIEF ......................................................................................................51

DEMAND FOR JURY TRIAL ..............................................................................................52

Plaintiff Bonnie Hendricks, individually and on behalf of all others similarly situated (the "Class"), alleges the following based upon the investigation of counsel and information and belief as noted.

## I. INTRODUCTION

1. The ability of a passenger car to stop when the driver pushes on the brake pedal cannot be overstated as critical to the safety of the driver and passenger within the vehicle and innocent bystanders who happen to be in the proximity of a moving vehicle at any given time. A Vehicle manufacturer and its U.S. distributor must take all necessary steps to ensure that the vehicles it sells do not experience systemic failures of the braking systems. And if any such failures are known or discovered, then the vehicle manufacturer and its distributor must repair or replace defective components in the braking system that can lead to such systemic failures.

2. This lawsuit arises because Toyota Motor Corporation and its U.S. distributor, Toyota Motor North America, Inc. (collectively, "Toyota"), know that the braking systems in the vehicles identified as "Affected Vehicles" below contain a defect that causes systemic braking system failures. Yet Toyota refuses to repair or replace such defective systems until and unless unsuspecting drivers of Affected Vehicles actually experience a brake failure—which could obviously result in injuries or even deaths that could otherwise be avoided.

3. Affected Vehicles include at least the 2010–2015 Prius and Prius PHV, the 2012–2015 Prius V, the 2012–2014 Camry Hybrid, and the 2013–2015 Avalon Hybrid. If further investigation reveals that additional Toyota and Lexus vehicles contain the same defective brake system components, then the models identified as Affected Vehicles may be amended.

4. The brake systems in the Affected Vehicles are defective because the brake booster pump assembly can—and with unreasonably frequency does—fail to operate as necessary to ensure the brakes engage when the brake pedal is depressed. The defect endangers

drivers, passengers, and other persons and property in the vicinity of an Affected Vehicle at any time that it is in motion. The defect thus renders the Affected Vehicles less safe and less valuable than consumers would reasonably expect and it makes them less safe and less valuable than the Affected Vehicles would be if Toyota did not design and sell the Affected Vehicles with the defect.

## II.    PARTIES

### A.    Plaintiff

5.    Plaintiff and each and every Class member has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Affected Vehicles, including but not limited to out-of-pocket loss and diminished value of the Affected Vehicles.

6.    None of the Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff or Class members of the braking defect in the Affected Vehicles prior to purchase.

7.    Plaintiff received information about the characteristics, benefits, safety, and quality of the Affected Vehicles at the dealership and/or through Toyota's extensive advertising concerning quality and safety, as intended by Toyota.

#### 1.    Bonnie Hendricks

8.    Plaintiff Bonnie Hendricks is a resident of Loveland, Ohio, domiciled in the Southern District of Ohio. On or about March 22, 2011, Plaintiff purchased a Toyota Prius (for the purpose of this section, the "Affected Vehicle") in San Rafael, California, for use in Ohio. The Vehicle was never registered or licensed in California. Plaintiff purchased and still owns the Affected Vehicle.

9.    Unknown to Plaintiff at the time the Affected Vehicle was purchased, it was equipped with a braking system that was defective and did not function safely, as advertised, or

- 2 -

as intended by its design. Toyota's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Affected Vehicle with the brake defect has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle.

10.    Plaintiff uses the Affected Vehicle for personal, family, and/or household uses. Prior to purchasing the Affected Vehicle, Plaintiff reviewed the Munroney Label Toyota placed on the window. The window sticker advertised the Affected Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details, and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the Affected Vehicle. The Munroney sticker did not disclose that the Affected Vehicle possessed any defects.

11.    Plaintiff has experienced the braking defect over the duration of ownership. If she attempted to slow down or stop when the car happened to be travelling over a surface that was not smooth, upon depressing the brake pedal the car would lurch, or surge, forward slightly before stopping.

12.    Plaintiff phoned her local dealership, Kings Toyota, to inquire about service for this issue. Plaintiff told service technicians at Kings Toyota about the brake problem she experienced, but both the service and warranty departments told her that absent a recall notice, they would not inspect the vehicle without charging her for the inspection and that they had no knowledge of any defect concerning the brakes in her vehicle.

13.    Toyota never told Plaintiff about the braking defect, so Plaintiff purchased her Affected Vehicle on the reasonable, but mistaken, belief that her Affected Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life.

- 3 -

Plaintiff specifically shopped for a Toyota vehicle because she believed Toyota's broad advertising messaging that its vehicles were of high quality, were safe, and were reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had a braking defect or the fact that Toyota would refuse to repair the defect until and unless Plaintiff's brakes failed. Had Toyota disclosed the defect, and the fact that Toyota would require Plaintiff to pay out-of-pocket costs, including repair costs, Plaintiff would have received these disclosures, and she would not have purchased the Affected Vehicle or would have paid less for it.

**B.    Defendants**

14.    Defendant Toyota Motor North America, Inc. ("TMNA") is incorporated and headquartered in Texas. TMNA is Toyota's U.S. sales and marketing arm, which oversees sales and other operations in 49 states. TMNA's predecessor entity was Toyota Motor Sales, Inc. ("TMS"), which was headquartered and incorporated in California. Prior to the changeover, TMS, and now TMNA, distributes Toyota, Lexus, and Scion vehicles and sells these vehicles through its network of dealers. Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to TMNA. Money received by the dealer from a purchaser can be traced to TMNA.

15.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes, and sells Toyota, Lexus, and Scion automobiles in Ohio and multiple other locations in the United States and worldwide.

16.    TMNA and TMC sell Toyota vehicles through a network of dealers who are the agents of TMNA and TMC.

- 4 -

17.     TMNA and TMC are collectively referred to in this complaint as "Toyota" unless identified as TMNA or TMC.

18.     Toyota manufactured, sold, and warranted the Affected Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective braking system in the Affected Vehicles

### III.     JURISDICTION

19.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Toyota Motor Corporation ("TMC") by virtue of its transacting and doing business in this District. TMC has purposefully availed itself of the benefits and protections of Ohio by continuously and systematically conducting substantial business in this judicial district. TMC has intentionally and purposefully sold, supplied, and distributed Affected Vehicles into the stream of commerce within Ohio and throughout the United States.

21.     This Court has personal jurisdiction over Toyota Motor North America, Inc. by virtue of its transacting and doing business in this District and because TMNA is registered to do business in Ohio.

### IV.     VENUE

22.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper

- 5 -

in this District under 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this judicial district for

venue purposes. Toyota licenses authorized dealers in this District, it advertises in this District,

and it profits from its activities conducted within this District.

## V.    FACTUAL ALLEGATIONS

### A.    Toyota's History of Defective Hybrid Braking Systems

23.    For nearly 20 years, Toyota has struggled to implement a braking system in its

hybrid vehicles that functions reliably and consistently, and in conformity with its promises of

quality, reliability, and safety.

24.    Even when Toyota has acknowledged its faulty brakes, it has taken extraordinary

measures to minimize its lost profits as a result by delaying the issuance of repair guidance until

vehicle warranties have run, so as to shift the costs of repair of its defective brakes from itself to

unsuspecting consumers.

25.    For example, on February 8, 2010, Toyota announced a voluntary recall of all

2010 Prius (and certain Lexus branded hybrid vehicles) to repair a brake defect in Third

Generation Prius—which are Affected Vehicles here.[1] Toyota also announced that it had

incorporated the same software update to the braking system into its ongoing production of Third

Generation Prius and all Third Generation Prius on dealers' lots were being updated as well.

26.    The braking components in the Third Generation Prius—which Toyota claimed

then to be fixing—were the same as those in the Second Generation Prius, of which Toyota had

sold nearly 750,000 units from 2004 to 2009. As of the time of the Third Generation Prius recall,

there were over 400 NHTSA complaints concerning the braking systems in the Second

---

[1] http://rudatoyota.com/recall-information.aspx.

Generation Prius, but Toyota did not recall those vehicles, nor did it timely provide a service bulletin regarding the widely reported braking defect.

27.    On September 17, 2012, Toyota published its first TSB related to the hybrid braking systems, No. T-SB-0174-12, describing one manifestation of the braking defect and requiring the replacement of the computer assembly containing the software controlling the braking system in the Second Generation Prius as the sole remedy.[2] The TSB is titled: "ABS/VSC DTC C1247 – Stroke Sensor Detection Logic Update." The TSB describes that some of the affected vehicles may present an error code for "Stroke Sensor Malfunction."

28.    The TSB states that the error code may result from "overly sensitive monitoring logic without any other ABS/VSC system issue." The repair is simply to "replace the ABS/VSC ECU with an ECU containing updated monitoring logic."[3] Obviously, if the monitoring logic itself is "overly sensitive," as Toyota admits, that is a defect that exists in every Second Generation Prius that contains such monitoring logic—i.e., all of them.

29.    As reports of the braking defect in the Second Generation Prius became widespread, owners' complaints and experiences began to appear on websites, blogs, and online communities. Examples of such postings, from throughout the United States, include the following:[4]

> Anti-lock brake system on dry and wet roads have adversely effected braking on my 2007 prius for as long as I've owned it (since 10/2010). when the anti-lock brake system engages while pressing the brake with your foot the car slightly accelerates (or jumps/lunges) forward for a fraction of a second before the brakes then engage. on 11/02/2012 this issue contributed to a collision. without this glitch, i may have been able to stop my car completely (as i was already only

---

[2] Attached as Exhibit A.

[3] *See id.*

[4] The statements are copied verbatim from http://www.faqs.org/car/toyota-prius-2007/service-brakes/#complaints_0 (last visited February 5, 2020).

going very slowly). on previous visits to the dealer, i was told that's just the way the car is built and that there's nothing that can be done to change it.

I am documenting that i am experiencing this issue: toyota recall campaign #10v039000 though this recall is technically for 2010 prius vehicles only, my 2007 prius experience the same problem: inconsistent brake feel after abs actuation during slow and steady application... however, this issue has occured even during dry weather on smooth road (unlike the campaign states under slippery/wet/rough road conditions). this problem has happened 3 times total over the past month since i purchased the vehicle mid-october 2010.

Whenever i brake when going over a bump, such as a manhole cover, pothole, or cobblestone road, the abs system engages and for a moment the brake does not seem to be working, the car is not slowing. i am worried it could lead to an accident if another car were close in front of me. when my husband mentioned the problem to the toyota dealer, the brakes were checked and we were told there was nothing wrong. however, this continues to happen and the moment without braking is too long for comfort.

2007 toyota prius---repeatedly on rough pavement, if my wife or i attempt to brake the car, it is as if the car is running away with us in it. i just had the car serviced at our local toyota agency (landers toyota), and was told that our problem was normal. i tell you it is not normal, and has never occurred in any other car i own or have owned.

I own a 2007 prius that has a break issue concerning me. when the brakes are engaged and i go over a rough spot or bump, the brakes fail for about 1 second and it feels as though the car is propelled forward. i have been told by the dealer on 2 occasions that it's just the abs brakes kicking in, however i have never had this happen with any other car i have driven. i have not had an accident (yet) but have become extremely cautious when i can identify a spot in the road that might cause trouble. the lack of brakes for even 1 second might mean that i am unable to stop from hitting a car ahead of me if that car stops quickly and the road if rough.

I currently own a 2010 prius and have had the brake recall work done. previously when i was living in belgium, i leased a 2007 prius. i complained to the toyota dealer about the lurching forward of the car when i braked if there was even mildly rough or damp pavement. they told me that it wasn't a problem. my husband and i were in an accident in belgium due to this problem. a stop light turned red and when we tried to stop, the car kept going and we ran into a motorcyclist. thankfully he wasn't injured but we had about $1,000 worth of damage to the front end of our car that we had to pay for. the dealer continued to claim that there was nothing wrong with the brakes.

Traveling slow speed 25-35 apply brakes and hit a dip in the road or bump in the road and the car quickly lunges forward. i don't feel like i necessarily lose the brake but that the car just lunges forward. i thought i reported this to toyota soon

- 8 -

after getting the car but i checked my records and i reported it twice last year after my husband confirmed that it happened to him. toyota checked the brakes and said everything looked okay and that they could not duplicate the problem.

Prius 2007, failed to stop at very low speed. with a guest inside my car, i drove over a railroad track. there was a street light up front, and a couple of cars ahead of mine. as i pressed my brakes, the car did not stop. my car rear ended the front car, and my insurance was charged for it. … now i have a doubled car insurance payment. the accident occurred on may 21, 2009. i took my car on the 26 may 2009 for a 40 miles maintenance paid in advance when i bought the car. the brakes were also checked and no problems found by the toyota dealer. i took my car again feb 20, 2010, again, no problems found. today i am reluctant, on my mind, if the prius will stop or not when brakes a pressed. car was purchase on february 2007.

When i drive my 2007 prius to work, i pass by 101 south to 110 south freeway. at that curve, there is a little bump, when i drive about 30 mph at that bumpy spot, i experienced four times lost my breaking system for a second or two. (whenever i loose braking system brake light come on for a second or two) one tine i had nearly miss the car in front. whenever i drive that spot i am slowing down to 20 mph. 2007 prius definitely has braking problems. i am afraid to drive my prius. i need help.

This has happened dozens of times, to myself and my wife. we are braking, and whilst braking drive over a pothole or drain. the traction control comes on, and the car disengages the brakes and the car lurches forward. after clearing the pothole, the traction control then disengages, and the brakes re-engage. several times, i have come close to hitting the car in front. conditions: clear, sunny, dry roads. car: toyota prius, year 2007.

When braking while driving over potholes, speed bumps, manhole covers, or any kind of bump in the road, car lurches forward, and brakes do not work at that moment, in addition, the traction warning light flashes telling driver car has lost traction with road. it occurs every single time the brakes are depressed while driving over a bump, pothole, manhole cover, or any kind of bump in the road. have come extremely close to rear-ending an individual in front of me at an intersection because there was a bump as i approached the intersection, and was braking to slow down. have taken to dealer once and told brakes are fine, unable to duplicate problem. taking back again to have service technician ride with us so we can demonstrate problem.

I have an ongoing problem with my 2007 prius with braking and traction control in slippery conditions (rain, snow, ice), and on slippery or uneven surfaces (railroad/trolley tracks, manhole covers, etc.). i have reported it to the toyota dealer several times starting in the summer of 2007 and have been told there is no problem. the car seems to lurch or slide under these conditions which is alarming

- 9 -

even at very low speeds. the traction control light flashes, and there is a momentary inability to brake or stop the car.

I own a 2007 toyota prius and have experienced occasional momentary loss of braking (my foot firmly on the brake pedal) while driving over a bumpy surface. while braking over small pot holes, railroad tracks, rough patches, etc., the car seems to lunge forward apparently as the brakes release for a split second (approximately 1/4 to 1/2 second). the road conditions can be wet or dry. at the same time, my traction control light will flash on and off until the road smoothes out. this issue is ongoing, so incident date below is meaningless.

I own a 2007 toyota prius that exhibits exactly the same symptoms with the braking system that has caused the recall in 2010 models. when going over a bump the brakes appear to fail for about 1 or 2 seconds which gives the illusion that the car is lunging forward. this happens everytime i am applying the brakes while driving across bumps or railroad tracks. i reported this to a toyota dealer twice since purchasing the car and was told this is just how prius's are.

the contact owns a 2007 toyota prius. the contact stated that while driving approximately 10 to 15 mph when approaching a gate, after she tried to use the brake the vehicle continued to surge forward and she crahsed into the gate. the contact was not injured and the police were called and a report was available. the vehicle was towed to a dealer and they advised her that they could not diagnose the failure. the vehicle was not repaired. the vehicle has continued to have the same failures for the next 2 years on a intermittent basis. each time the vehicle was taken to a dealer and they constantly informed her that they could not diagnose the failure. the manufacturer was contacted in the form of a letter and they replied by saying they have inspected the vehicle and found no known failures. the failure mileage was approximately 9,000.

The 'brake cut-out driving over a pothole or manhole cover' is >not< restricted to the 2010 prius. my 2007 has done that since day one [65k miles ago]. there are hills near my house where i have to go out of my way to avoid manhole covers -- particularly the last one near a stop sign. the car just goes into free-wheel mode for a second or so.

My 2007 prius touring can/does experience braking issues when slowing/braking downhill and coming in contact with a manhole cover, pothole, or other even road surface. thought it was the tires, so replaced the original bridgestones for nokians, but the issue still occurs. the sensation is you feel like you've lost control of the car momentarily. as a result, i've changed my commute route home and drive much slower (was already driving slower since prius mileage is dependent on mph). on occasions, the speed (on a straight away) set with cruise control will increase by itself ... by a couple mph .... w/o me doing anything or touching anything. so i'm forced to tap brake ........ occurred this weekend with passengers - they said they felt the surge .....

- 10 -

Toyota prius 2007 - antilock brake failure hitting potholes, man hole covers, crossing train tracks, going the speed limit down hills, rain & snow are the worst. every time car is taken in to dealer for servicing, we inform them of the brakes. they ensured us that nothing was wrong with them and there was nothing to worry about. we contacted our primary dealer who has done most of the services for the car, they conveniently no longer have service records for my vehicle prior to august 2009. the most recent incident that sent us complaining to the dealer was in october 2009, when returning home from work and the brakes needed to be applied in order to avoid hitting a deer, the brakes did absolutely nothing. the car continued to move and narrowly missed hitting the deer. this was reported to toyota of york in pennsylvania. the primary dealership that has provided our services is riverhead toyota in new york. the recent snowfall in pennsylvania has essentially made my car useless, it cannot handle the snowy roads without sliding all over the place, and we no longer trust the brake system in the event we need them. no physical injuries have occurred as a result of the brakes on our particular car, however emotionally, we are worried about placing ourselves in any potential situations where an accident could occur.

I was braking to slow down and make a turn. when i applied my brakes over the uneven surface, the brakes were working, then let up for a second. this has happened enough that i have changed my driving habits to account for this slippage in brakes. it's not a sliding issue - i can feel the tension in the brake pedal ease up momentarily each time. i'd say this happens at least once per month since i purchased the car new in 2007.

I have owned my 2007 prius since july, 2007. on an erratic basis, as i am braking (often as i am going over a bumpy road), the car seems to surge forward. it is as if the engine starts running harder. the light that indicates poor traction also comes on - it is as if i am not making good contact with the road. i have had no accidents but it is terrifying for me and i am fearful when someone/family member drives my car who is not aware of or has not become comfortable with dealing with this problem. fyi: even before prius said we should use different floor mats, i had made the change. i am not one to make a complaint but think that this is the time to make my concerns heard.

The toyota braking problem is not a new issue. i own a 2007 prius and my brakes have always failed when driving on slick surfaces or over potholes. the slippery surface icon flashes on the dashboard and the car does not stop immediately. most recent was wednesday morning in an inch of snow when my car failed to stop and came to a halt inches from a brick wall. i hope the system is inspected on all cars and not just 2010 models.

30.    On information and belief, Toyota knowingly and willfully delayed publication of

TSB 0174-12 until such time as virtually all the Second Generation Prius would be outside of

Toyota's three-year warranty period. Rather than immediately act to avoid potentially serious

and life-threatening vehicle accidents involving the Second Generation Prius, Toyota—in an attempt to avoid a potential billion dollar recall/repair expense—put safety second to profits.

**B.**     **The Defective Hybrid Braking Systems in the Class Vehicles**

31.     In February 2013, Toyota announced a voluntary safety recall relating directly to the "brake booster pump assembly" that is at issue here. Toyota Safety Recall 13V-235 correlated with a Defect Information Report ("DIR") that Toyota submitted to the National Highway Traffic Safety Administration ("NHTSA"). The DIR described the problem as one caused by "brake pressure accumulators consisting of a metal plunger containing brake fluid encased in a metal housing." The DIR noted that the "plunger is designed with metal pleated bellows to allow for motion," and that "nitrogen gas is sealed between the plunger and the housing." Toyota stated that it issued the recall due to the "possibility that a fatigue crack could develop in the bellows due to the vertical vibration of the plunger while driving." And that if this occurred, "nitrogen gas could leak into the brake fluid and gradually cause the brake pedal stroke to become longer, resulting in decreased hydraulic pressure." Toyota admitted that this "could affect stopping distance and increase the risk of a crash."[5]

32.     But following its playbook from the braking defect in the Second Generation Prius, Toyota did not voluntarily recall the vast majority of the Affected Vehicles that contain this admitted defect. Instead, Toyota recalled only a portion of its 2010 Toyota Prius. It made no effort to notify owners of Affected Vehicles of this known issue with its braking systems in all the Affected Vehicles and instead kept this information from consumers until the warranty period for the Affected Vehicles had run.

---

[5] *See, e.g.*, https://www.regit.cars/recalls/toyota-prius (last visited April 3, 2020).

33.    Finally, on September 4, 2019, Toyota issued TSB 0130-19, which covered 2012–

2014 Camry Hybrids and 2013–2015 Avalon Hybrids. Just like the 2013 voluntary recall, that

TSB admitted a malfunction in the "brake booster assembly," in particular, a malfunction that

"may be caused by a small internal brake fluid leak in the brake booster assembly." In

conjunction with this TSB, Toyota issued an extended warranty program under which it would

cover the cost of repair, but only in a small fraction of the hundreds of thousands of Affected

Vehicles and even then, only if the Affected Vehicle's onboard computer registered a Diagnostic

Trouble Code ("DTC") that indicated that the leak and failure had already occurred. That is,

Toyota made no effort to prevent the brakes in the Affected Vehicles from failing due to this

defect, instead it simply agreed to fix a small fraction of them after the failure had been detected.

34.    Braking-related complaints submitted by Affected Vehicle owners to NHTSA are

every bit as common for the Affected Vehicles as the Second Generation Prius. In fact, hundreds

of owners of Affected Vehicles have submitted complaints and accident descriptions that

described a remarkably similar, if not identical, chain of events. Submitted complaints include

the following:

> NHTSA ID Number: 10482485
> Incident Date October 5, 2012
> Consumer Location MARLBORO, MA
> Vehicle Identification Number JTDKN3DU0B0****
> 2011 Toyota Prius
> WE PURCHASED A 10 MONTH OLD TOYOTA PRIUS ON MARCH 16ND
> 2012 WITH ONLY 1367 MILES. THE PRIOR OWNER WHO WAS LEASING
> THIS CAR RETURNED THE CAR DUE TO MILEAGE INCONSISTENCY.....
> ON OCT 5TH 2012, I WAS DRIVING ON SUNNY DRY DAY AT 22MPH
> THE VEHICLE IN FRONT OF ME SLOWED DOWN. I STEPPED ON THE
> BRAKE TO SLOWDOWN BUT THE CAR DID NOT STOP. WHEN I
> STEPPED ON THE BRAKE IT DID NOT RESPOND IMMEDIATELY, I
> APPLIED COMPLETE PRESSURE TO THE BRAKE HOWEVER THE CAR
> STILL DID NOT SLOW DOWN ENOUGH AND I HIT THE CAR IN FRONT
> OF ME. PER THE REPORT FROM TOYOTA THE SPEED WENT DOWN
> FROM 22MPH TO 5MPH AT THE TIME OF THE IMPACT. I DO NOT

- 13 -

AGREE WITH THE TOYOTA REPORT THAT I ONLY STEPPED ON THE
BRAKE FOR 2 SECONDS AS IT WAS MUCH MORE... BEFORE THE
ACCIDENT THE BRAKE WAS MUCH HARDER AND LESS FORCEFUL
PRESSURE MADE THE CAR STOP AFTER THE ACCIDENT THE BRAKE
FEELS SOFTER AND MORE PRESSURE IS NEEDED TO MAKE THE
BRAKE WORK. THIS IS AN ALMOST BRAND NEW CAR WITH 7K MILES
ON IT HOWEVER I DO FEEL SAFE IN THIS CAR ANYMORE AFTER THIS
ACCIDENT AND I FEAR FOR MY LIFE AND PUBLIC SAFETY. WHAT
WILL HAPPEN I DRIVE ON A HIGHWAY AT 60MPH AND THE BRAKE
WILL NOT WORK?? TOYOTA DENIES ANY TECHNICAL ERROR WITH
THE CAR AND BLAMES THE ACCIDENT ON ME. THERE ARE PLENTY
OF REPORTS OF SIMILAR ACCIDENTS REPORTED BY CONSUMERS ON
THIS SAME ISSUE HERE: HTTP://TOWNHALL-
TALK.EDMUNDS.COM/DIRECT/VIEW/.F0DB60B. *TR

NHTSA ID Number: 10553888
Incident Date January 24, 2013
Consumer Location DAVIDSONVILLE, MD
Vehicle Identification Number N/A
2011 Toyota Prius
CAR LURCHES FORWARD WHEN BRAKES ARE APPLIED ON BUMPY
OR UNEVEN SURFACES, AS WELL AS SLIPPERY SURFACES SUCH AS
METAL PLATES THAT YOU SOMETIMES FIND COVERING CITY
STREETS UNDER CONSTRUCTION. ON ICE, WHEN APPLIED
FORCEFULLY, NO BRAKING ACTION OCCURS WHATSOEVER, EVEN
WHEN PUMPED OR RELEASE AND REAPPLIED. IN JAN 2013, CAR SLID
MORE THAN 150' ON A LIGHTLY SNOWY ROAD INTO A DITCH. MY
SENSE IS ANTI-LOCK BRAKES ARE DEFECTIVE, BUT IT COULD BE
SOME OTHER COMPUTER OVERRIDE THAT KICKS IN. WHEN
STOPPING FOR A TRAFFIC LIGHT ON A BUMPY ROAD, OR OVER ONE
OF THOSE CONSTRUCTION PLATES, IT'S SCARY, AND I FEEL LUCKY I
HAVEN'T HIT ANYONE. *TR

NHTSA ID Number: 10498096
Incident Date February 10, 2013
Consumer Location KIRKLAND, WA
Vehicle Identification Number JTDKN3DU2B0****
2011 Toyota Prius
I AM AN EXCELLENT DRIVER. I PURCHASED THIS PRIUS IN THE
SUMMER OF 2011. WE (MY WIFE AND YOUNG DAUGHTER) WERE
PROCEEDING ON JUANITA DRIVE N.E. IN KIRKLAND, WA. MY WIFE
AND I AGREE THAT OUR SPEED WAS APPROXIMATELY 30-33 MPH
AND THAT THERE WERE APPROXIMATELY 3+ CAR LENGTHS
BETWEEN US AND THE VEHICLE IN FRONT OF US. THE WEATHER
WAS DRY AND SUNNY. SUDDENLY, A VEHICLE THREE VEHICLES
AHEAD OF US STOPPED TO MAKE A LEFT TURN, AND THE TWO
VEHICLES BEHIND IT WERE ABLE TO STOP. I IMMEDIATELY APPLIED

MY BRAKES TO THE FLOOR AS SOON AS I OBSERVED THE STOPPED VEHICLE AHEAD. I FELT NO RESPONSE - NO GRIPPING OF THE BRAKES OR GRIPPING OF THE WHEELS TO THE ROAD, NO SQUEALING, NO SKIDDING, NO SENSE OF THE BRAKES SLOWING THE VEHICLE IN THE THREE SECONDS I APPLIED THEM. DUE TO VEHICLES IN THE OPPOSING LANE, A NARROW ROAD AND NO SHOULDER (A DITCH WITH TELEPHONE POLES ON THE RIGHT), I WAS FORCED TO DESIGN THE LEAST HARMFUL IMPACT - MY FRONT RIGHT CORNER TO THE REAR LEFT CORNER OF THE VEHICLE IN FRONT. THE IMPACT TORE OPEN THE RIGHT FRONT OF THE VEHICLE, SHATTERING THE WINDSHIELD NEXT TO MY WIFE AND CAUSING HER LEGS TO FLY UP AND STRIKE THE DASHBOARD, INJURING HER LEGS IN SEVERAL PLACES. HER AIRBAG DID NOT DEPLOY. MY 7-YEAR-OLD WAS IN HER CAR SEAT IN THE BACK SEAT. THE LARGER SPLIT BACK WAS BEHIND HER. THE BACK BECAME UNHINGED AT IMPACT AND FLIPPED FORWARD, FORCING MY DAUGHTER'S UPPER BODY FORWARD. SHE SUSTAINED MINOR FACIAL INJURIES. WHILE IT IS POSSIBLE THAT THE AIRBAG NON-DEPLOYMENT WAS APPROPRIATE (I AM NOT CERTAIN OF THIS), THERE IS NO QUESTION THAT THE BRAKING WAS SOFT, SQUISHY, NON-EXISTENT, AND THE BACK SEAT SHOULD NOT HAVE BECOME UNHINGED. *TR

NHTSA ID Number: 10505322
Incident Date March 30, 2013
Consumer Location HUDSON, FL
Vehicle Identification Number JTDZN3EU6C3****
2012 Toyota Prius V
SLOWED FOR RED LIGHT THAT WAS VISIBLE FOR A GREAT DISTANCE SO COASTING AND APPLIED BRAKES AND THEY WEREN'T THERE....I HIT THE CAR IN FRONT OF ME, HE HIT THE CAR IN FRONT OF HIM....MOSTLY DINGS IN FENDERS....MY HOOD WAS UP ON ONE SIDE, AND FRONT PANEL MOVED....NOBODY WAS HURT POLICE CAME AND SAT IN THE CAR AND APPLIED BRAKE AND IT WENT TO THE FLOOR. HE SAID "YOU HAVE NO BRAKES; DO NOT DRIVE THE CAR, HAVE IT TOWED". *TR

NHTSA ID Number: 10898350
Incident Date April 1, 2013
Consumer Location WAYNE, NJ
Vehicle Identification Number N/A
2011 Toyota Prius
WHEN THE BRAKES ARE PRESSED, IF YOU HIT A BUMP OR POTHOLE, THE BRAKES LOCK AND THE CAR HYDROPLANES FORWARD. I HIT THE BACK OF SOMEONE BECAUSE OF THIS DEFECT.

NHTSA ID Number: 11110691
Incident Date September 12, 2013

Consumer Location WAYNE, NJ
Vehicle Identification Number JTDKN3DU9B1****
2011 Toyota Prius
MY BRAKES CONSISTENTLY LOCK AND THE CAR LUNGES FORWARD
WHEN I HIT A POTHOLE WHILE BRAKING. THIS CAUSED A CRASH
WHEN THE CAR WAS ONLY A COUPLE YEARS OLD WHEN THE
BRAKES FAILED TO STOP THE VEHICLE AND IT LUNGED FORWARD
INTO THE BACK OF A CAR. THIS IS EXTREMELY DANGEROUS AND
I'VE SEEN THIS COMMENT OFTEN WITH THIS VEHICLE. I DON'T
UNDERSTAND WHY TOYOTA HAS NOT ADDRESSED THIS ISSUE.

NHTSA ID Number: 10547701
Incident Date October 10, 2013
Consumer Location KETTERING, OH
Vehicle Identification Number JTDKN3DUXB0**** 2011 Toyota Prius
LOVE MY PRIUS UNTIL I STARTED TO BECOME SCARED DAILY BY
THE UNSAFE DRIVING CONDITIONS DUE TO THE CAR'S TENDENCY
TO LURCH FORWARD WHILE BRAKING OVER BUMPY GROUND OR
POTHOLES WHEN COMING TO A STOP OR SLOWING DOWN TO TURN.
IT'S RATHER STARTLING AND FORTUNATELY HAS NOT CAUSED AN
ACCIDENT YET FOR NO OTHER CAR HAS BEEN AROUND WHEN THIS
HAPPENS. A DIFFERENT STORY WITH THE OTHER MORE SERIOUS
ISSUE WITH THE BRAKING SYSTEM WHEN NEEDING TO COME TO AN
IMMEDIATE STOP DUE TO SUDDEN STOPPING OF THE CAR IN FRONT.
ABOUT A MONTH AGO, I EXPERIENCED THE "NO BRAKE" ISSUE
WHEN SUDDENLY NEEDING TO PRESS HARD ON THE BRAKE FOR A
STOPPED CAR IN FRONT OF ME. I HAD PLENTY OF DISTANCE FOR
STOPPING BUT BECAUSE OF THE "NO BRAKE" ISSUE HAD TO STEER
OFF TO THE SIDE TO MISS THE CAR. SHOCKED AND CONFUSED AT
WHAT HAPPENED, THOUGHT MAYBE I DID SOMETHING WRONG BY
NOT PUMPING THE BRAKE. THEN TWO DAYS AGO, I WAS SITTING AT
A RED LIGHT WHEN IT TURNED GREEN, TRAFFIC STARTED MOVING
BUT THEN SUDDENLY STOPPED FOR AN EMERGENCY VEHICLE TO
GO THROUGH THE INTERCEPTION. I PRESSED ON THE BRAKE HARD
AND JUST KEPT MOVING RIGHT INTO THE REAR OF THE TRUCK IN
FRONT. I NOW HAVE ABOUT $1,800 OF DAMAGES FOR THE TRUCK
(NO DAMAGE CAUSED TO IT) HAD AN HITCH WHICH PUNCTURED MY
BUMPER AND BENT THE AIR CONDENSER. I HAVE DECIDED NOT TO
FIX IT FOR IT COULD HAPPEN AGAIN. WHEN I DECIDE WHAT'S MY
NEXT SAFE CAR TO PURCHASE, I WILL HAVE IT FIXED AND TRADE IT
IN FOR IT AS SOON AS POSSIBLE FOR I'M NOW SCARED TO DRIVE IT.
THE DEALERSHIP REPLY TO MY CONCERN IS THE SAME AS WITH
EVERYONE ELSE'S COMPLAINT AND REVIEW I HAVE READ, THIS IS
HOW THE BRAKE SYSTEM WORKS AND NO ERROR. THEY DO NOT
WANT TO TAKE RESPONSIBILITY OF THIS FAULTY BRAKE SYSTEM
WHICH CREATES UNSAFE DRIVING CONDITIONS. FORTUNATELY IT
WAS A TRUCK IN FRONT OF ME THIS TIME. BUT WHAT IF IT'S A

- 16 -

PERSON WALKING ACROSS THE ROAD IN FRONT OF ME NEXT TIME??
*TR

NHTSA ID Number: 10550179
Incident Date October 30, 2013
Consumer Location MINNETONKA, MN
Vehicle Identification Number N/A
2012 Toyota Prius
THE BRAKE DOEN'T WORK WHEN I WAS DRIVING OUT OF THE
HIGHWAY. I PRESSED HARD OF THE BRAKE AND CANNOT STOP THE
CAR. AND I CRUSHED INTO A BIG TRUCK. THE CAR CRUSHED ONCE
WITH THE TRUCK AND THE MOMENTUM MADE THE CAR TO HIT THE
TRAFFIC LIGHT POLE AGAIN. TERRIBLE. *TR

NHTSA ID Number: 10598545
Incident Date March 27, 2014
Consumer Location ANACORTES, WA
Vehicle Identification Number JTDKN3DU1B1****
2011 Toyota Prius
WHILE PULLING INTO A PARKING SLOT IN A PARKING LOT, WHICH
WAS ON A SLOPE, I APPLIED THE FOOT BRAKE WITHOUT ANY
RESPONSE WHATSOEVER. THE VEHICLE GAINED ENOUGH SPEED TO
JUMP THE SMALL STOP-CURB AND HIT A CONCRETE WALL NEXT TO
IT. THE DAMAGE TO THE FRONT OF THE CAR WAS JUST OVER $4000. I
THOUGHT I HAD MISSED THE PEDAL. ON JUNE 12TH AND 15TH, I HAD
TWO MORE INCIDENTS OF THE BRAKE PEDAL GOING ALL THE WAY
TO THE FLOOR WHILE EITHER AT SLOW SPEED OR STOPPED. MY
DEALER SAYS IT WAS A PROBLEM ON THE 2010, BUT HE HAS NOT
SEEN IT ON A 2011. MY WIFE NOW REFUSES TO DRIVE THE CAR. *TR

NHTSA ID Number: 10681105
Incident Date December 19, 2014
Consumer Location STRATFORD, CT
Vehicle Identification Number 4T1BD1FK3EU****
2014 Toyota Camry Hybrid
TL* THE CONTACT OWNS A 2014 TOYOTA CAMRY HYBRID. THE
CONTACT STATED THAT WHILE PULLING INTO A PARKING SPACE AT
APPROXIMATELY 2 MPH, THE BRAKES SUDDENLY
MALFUNCTIONED. THE CONTACT INDICATED THAT WHEN
ENGAGING THE BRAKES, THE PEDAL FAILED TO DEPRESS AND THE
VEHICLE CRASHED INTO A POLE. THE CONTACT DID NOT SUSTAIN
ANY INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE
WAS TAKEN TO THE DEALER WHO WAS UNABLE TO DUPLICATE THE
FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER
WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 7,400.

NHTSA ID Number: 10807100
Incident Date February 12, 2015
Consumer Location SHERWOOD, OR
Vehicle Identification Number 4T1BD1FK1DU****
2013 Toyota Camry Hybrid
I WAS ENTERING FREEWAY ON RAMP. HEAVY TRAFFIC. BEAUTIFUL
DAY, DRY ROADS. VEHICLE IN FRONT OF ME MADE BRAKED
SUDDENLY. I QUICKLY APPLIED MY BRAKES. MY BRAKES DID NOT
ENGAGE. I WAS APPROXIMATELY 2-3 CAR LENGTHS BEHIND
VEHICLE IN FRONT OF ME AND TRAVELING 25 MPH. WHEN I APPLIED
BRAKES, MY CAR DID NOT EVEN TRY TO STOP, IT BASICALLY SLID 2
1/2 CAR LENGTHS INTO REAR OF VEHICLE. MY VEHICLE ONLY
STOPPED MOVING BECAUSE IT WAS STOPPED BY VEHICLE IN
FRONT.

NHTSA ID Number: 10734278
Incident Date July 15, 2015
Consumer Location ROMEOVILLE, IL
Vehicle Identification Number JTDKDTB31E1****
2014 Toyota Prius
TL* THE CONTACT OWNS A 2014 TOYOTA PRIUS. WHILE DRIVING
APPROXIMATELY 25 MPH, THE CONTACT ATTEMPTED TO DEPRESS
THE BRAKE PEDAL, BUT THE VEHICLE DID NOT STOP. AS A RESULT,
A CRASH OCCURRED AND THE AIR BAGS DID NOT DEPLOY. THERE
WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS
NOT INJURED AND A POLICE REPORT WAS FILED. THE
MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE
APPROXIMATE FAILURE MILEAGE WAS 3,200.

NHTSA ID Number: 10794873
Incident Date October 16, 2015
Consumer Location COVINGTON, LA
Vehicle Identification Number JTDKN3DU1F0****
2015 Toyota Prius
I HAVE NOTICED THAT THE BRAKES SOMETIMES DO NOT APPEAR TO
WORK PROPERLY, AND ONCE I WAS INVOLVED IN AN ACCIDENT
DUE TO THE POOR BRAKING PERFORMANCE. ONCE I QUICKLY
TRANSITIONED FROM THROTTLE TO FULL BRAKING AND THE CAR
DIDN'T SEEM LIKE IT WAS APPLYING FULL BRAKING. IT DIDN'T
SEEM TO DECELERATE LIKE IT SHOULD HAVE. I REAR ENDED A
VEHICLE BECAUSE OF THE BRAKING PERFORMANCE. ANOTHER
TIME I HAD TO SLAM ON THE BRAKES COMING OFF AN INTERSTATE
AND THE BRAKES ALSO DIDN'T SEEM POWERFUL ENOUGH. IT'S AS IF
THE BRAKES DON'T FULLY "CATCH" UNTIL THE LAST MINUTE. BOTH
TIMES WEATHER CONDITIONS WERE DRY.

NHTSA ID Number: 10855586
Incident Date April 14, 2016
Consumer Location AUSTIN, TX
Vehicle Identification Number N/A
2013 Toyota Prius
WHEN THE DRIVER HAS TO SLAM ON THE BRAKES REALLY
QUICKLY THE CAR DOES NOT SLOWDOWN AT ALL. THE SKID LIGHT
COMES ON THE DASH BOARD, BUT OTHERWISE THE CAR DOES NOT
STOP. THIS HAPPENS EVEN ON A DRY SURFACE, WITH NO MOISTURE
ON THE SURFACE, AT SPEEDS AS LOW AS 20-30 MILES PER HOUR. IT
ALMOST ALWAYS DOES IT. IF THE DRIVER LIGHTLY TAP THE
BREAKS, THEN THE CAR WILL DECELERATE, BUT NOT IF THE
DRIVER HAS TO ABRUPTLY STOPPED. THIS IS QUILT A PROBLEM
GIVEN THAT SOMETIMES YOU NEED THE CAR TO STOP SUDDENLY IT
IT SIMPLY WON'T AT SPEEDS OF 20 MORE. THE CAR JUST STARTS TO
SKID. IT WILL NOT STOP OR GAIN TRACTION WITH THE SURFACE
THAT IT IS ON. THIS MEANS THAT IN A SITUATION WHERE THE
DRIVER NEEDS TO HIT THE BREAKS ALL THE WAY DOWN, THE CAR
STILL WON'T STOP. THIS PROBLEM IS MUCH WORSE IF ON WET OR
NEGATIVE SLOPING ROADS. HOWEVER, IT CAN HAPPEN EVEN ON
COMPLETE DRY SURFACE.

NHTSA ID Number: 10883971
Incident Date May 21, 2016
Consumer Location ATLANTA, GA
Vehicle Identification Number N/A
2014 Toyota Camry Hybrid
TL* THE CONTACT OWNS A 2014 TOYOTA CAMRY HYBRID. WHILE
DRIVING VARIOUS SPEEDS AND DEPRESSING THE BRAKE PEDAL
ATTEMPTING TO STOP, THE CONTACT'S VEHICLE WOULD NOT STOP
AND REAR ENDED ANOTHER DRIVER. THE CONTACT SUFFERED
MINOR INJURIES TO THE NECK THAT REQUIRED MEDICAL
ATTENTION. A POLICE REPORT WAS FILED. THE AIR BAGS FAILED TO
DEPLOY. THE VEHICLE WAS TOWED TO A COLLISION SHOP WHERE
THE CONTACT WAS INFORMED THAT THE BRAKES WERE NOT
FUNCTIONING. THE VEHICLE WAS THEN TAKEN TO A DEALER
WHERE IT WAS CONFIRMED THAT THE HYDRAULIC BRAKING
SYSTEM FAILED AND WOULD NEED TO BE REPAIRED. THE VEHICLE
WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 20,000. THE
VIN WAS NOT AVAILABLE.

NHTSA ID Number: 10875685
Incident Date June 17, 2016
Consumer Location GIG HARBOR, WA
Vehicle Identification Number JTDKN3DUXF1****
2015 Toyota Prius

TL* THE CONTACT OWNS A 2015 TOYOTA PRIUS. WHILE DRIVING
APPROXIMATELY 5 TO 10 MPH AND APPROACHING THE DRIVEWAY,
THE BRAKES FAILED. THE VEHICLE ACCELERATED AND CRASHED
INTO A GATE. THE BRAKE PEDAL WAS RE-APPLIED AND THE
VEHICLE STOPPED. THE CONTACT STATED THAT THE VEHICLE
TRAVELED 20 FEET BEFORE IT STOPPED. A POLICE REPORT WAS NOT
FILED AND THERE WERE NO INJURIES. THE AIR BAG FAILED TO
DEPLOY. THE VEHICLE WAS TOWED TO THE DEALER FOR
DIAGNOSTIC TESTING AND REPAIR. THE VEHICLE WAS NOT
REPAIRED. THE FAILURE MILEAGE WAS 17,000.

NHTSA ID Number: 10887699
Incident Date July 20, 2016
Consumer Location NOKESVILLE, VA
Vehicle Identification Number JTDKN3DU8B1****
2011 Toyota Prius
CAR WAS IN MOTION ABOUT 20MPH. WHEN BRAKES WAS APPLIED,
THE CAR FAILED TO SLOW DOWN BUT INSTEAD QUICKLY
ACCELERATED. CONTINUOUSLY APPLYING THE BRAKES DID
NOTHING. CAR CAME TO A STOP APPLY RUNNING INTO ANOTHER
CAR.

NHTSA ID Number: 10895714
Incident Date July 28, 2016
Consumer Location LIVERMORE, CA
Vehicle Identification Number 4T1BD1FKXCU****
2012 Toyota Camry Hybrid
I WAS IN MY GYM'S PARKING LOT AND HAD JUST TURNED LEFT
INTO A PARKING SPACE. I PLACED MY FOOT ON THE BRAKE TO
SLOW THE CAR TO A STOP AS IT MOVED FORWARD INTO THE
PARKING SPACE. HOWEVER, THE BRAKE PEDAL DID NOT RESPOND.
INSTEAD, THE CAR CONTINUED DRIVING FORWARD ON ITS OWN,
AND THEN I HEARD A SOUND OF ACCELERATION, AS IF THE CAR
WAS REVVING ITSELF UP TO A HIGHER SPEED. THINKING THAT THE
BRAKE HAD NOT ENGAGED, I TOOK MY FOOT OFF THE PEDAL AND
PLACED IT BACK ON THE BRAKE PEDAL, STEPPING HARDER, BUT
THERE WAS NO RESPONSE. AT THIS POINT, WITH MY FOOT STILL ON
THE BRAKE PEDAL, THE CAR JUMPED UP ONTO THE CURB WHILE
STILL ACCELERATING ON ITS OWN, RAN OVER THE SIDEWALK.
ROLLED UP AND OVER A TWO-FOOT HEDGE THAT RAN PARALLEL
TO THE SIDEWALK, THEN CRASHED INTO THE BRICK ENFORCED
CONCRETE COLUMN AT THE CORNER OF THE GYM BUILDING. THE
BRICK COLUMN STOPPED THE FORWARD MOMENTUM OF THE CAR,
BUT LEFT A LARGE DENT IN THE RIGHT SIDE OF THE CAR'S BUMPER
THAT WAS EMBEDDED WITH CHUNKS OF CONCRETE. IT ALSO
DENTED THE HOOD OF THE CAR, PUSHING IT OUT OF ALIGNMENT.
THE AIRBAGS IN THE CAR DID NOT DEPLOY. I HAD THE CAR TOWED

TO THE LOCAL TOYOTA DEALER AND HAVE REPORTED MY
ACCIDENT TO TOYOTA HEADQUARTERS. I AUTHORIZED THEIR
REVIEW OF MY CAR'S EVENT DATA RECORDER AND AM AWAITING
THEIR INVESTIGATION REPORT. THIS FRIGHTENING ACCIDENT LEFT
ME VERY SHAKEN. IT FELT AS IF I HAD NO CONTROL OVER THE CAR
AT ALL. IT SEEMED AS IF SOMETHING HAD TAKEN CONTROL OF THE
ACCELERATION OF THE CAR AND MY ATTEMPTS TO STOP THE CAR'S
FORWARD MOMENTUM BY STEPPING ON THE BRAKE HAD ZERO
IMPACT. THANK GOD NO ONE WAS ON THE SIDEWALK OR I WOULD
HAVE KILLED THEM. THESE CARS NEED TO BE RECALLED TO FIND
OUT WHAT IS CAUSING THIS POTENTIALLY DEADLY MALFUNCTION.
THEY ARE LETHAL WEAPONS ON OUR CITY STREETS!

NHTSA ID Number: 10919990
Incident Date October 5, 2016
Consumer Location LINCOLN, CA
Vehicle Identification Number JTDKN3DU0D0****
2013 Toyota Prius
I WAS TRAVELING LESS THAN 25 MPH ON A CITY STREET WHEN THE
CAR IN FRONT SUDDENLY STOPPED. I PANIC STOPPED - MOVING MY
FOOT OFF THE GAS PEDAL AND I BELIEVE THAT I HIT THE BRAKE
PEDAL. THE BRAKES DID NOT APPLY, AND I REAR-ENDED THE CAR
IN FRONT. I LEFT NO SKID MARKS. OBVIOUSLY I COULD HAVE NOT
ACTUALLY PUSHED THE BRAKE PEDAL, BUT I SINCERELY BELIEVE
THAT I DID. THE CAR BRAKES SEEM TO BE FINE, SO IF THE CAR
FAILED TO STOP THE PROBLEM HAD TO BE IN THE COMPUTER. *TR

NHTSA ID Number: 10923921
Incident Date October 17, 2016
Consumer Location TUCSON, AZ
Vehicle Identification Number JTDKN3DP4D3****
2013 Toyota Prius
I WAS DRIVING STRAIGHT ON A CITY ROAD WITH THE FLOW OF
HEAVY TRAFFIC AT ABOUT 40 MILES PER HOUR WHEN THE CAR IN
FRONT OF ME CAME TO A SUDDEN STOP. I IMMEDIATELY SLAMMED
ON MY BRAKES VERY HARD. AT THE TIME I DID THIS I HAD PLENTY
OF SAFE DISTANCE BETWEEN US. BUT, THE BRAKES NEVER CAME
ON AND I ENDED UP RUNNING INTO THE REAR END OF AN SUV AT
APPARENTLY FULL SPEED WITHOUT ANY NOTICEABLE SLOWDOWN.
THE BRAKES DID NOT COME ON. THEY DIDN'T GRAB, AND THEY
DIDN'T MAKE ANY SCREECHING NOISE AND THERE WERE NO TIRE
MARKS ON THE ROAD. ALSO ALL OF THE AIRBAGS DEPLOYED AND
THIS WAS A FRONTAL IMPACT, WHICH WAS VERY SURPRISING AND
SUFFOCATING. A CLOUD OF DUST FILLED THE CABIN OF THE CAR
AND I COULD NOT BREATHE. I WAS LITERALLY SUFFOCATING
UNTIL I WAS ABLE TO OPEN THE DOOR AND GET OUT OF THE
VEHICLE. I DIDN'T EVEN FEEL THE SEAT BELT TIGHTEN UP BEFORE

THE CRASH. THE BRAKES NEVER FELT LIKE THEY CAME ON AT ALL.
*TR *JS

NHTSA ID Number: 10971542
Incident Date April 6, 2017
Consumer Location KENT, WA
Vehicle Identification Number 4T1BD1FKXDU****
2013 Toyota Camry Hybrid
AROUND 11:30 AM, I WAS DRIVING SOUTH ON A TWO LANE ROAD,
AT APPROX. 25 MPH. THE BLACK VEHICLE IN FRONT OF ME APPLIED
THE BRAKES AND STOPPED. I WAS ABOUT 4 CAR LENGTHS BEHIND
THE BLACK VEHICLE WHEN I QUICKLY APPLIED THE BRAKE PEDAL.
THE BRAKE PEDAL WENT TO THE FLOOR AND MY CAR DID NOT
STOP NOR EVEN SLOWED DOWN. I PUMPED THE BRAKE PEDAL TWO
MORE TIMES, AGAIN, AND THE CAR DID NOT STOP NOR SLOWED
DOWN UNTIL I HIT THE BLACK VEHICLE IN FRONT OF ME.

NHTSA ID Number: 11014797
Incident Date July 28, 2017
Consumer Location FREDERICA, DE
Vehicle Identification Number JTDKN3DU7C5****
2012 Toyota Prius
ON JULY 28, 2017, I WAS DRIVING ALONG WITH MY THREE
CHILDREN. I PULLED INTO A DRIVEWAY TO PARK MY VEHICLE
BEHIND A PARKED VEHICLE. THERE WAS APPROXIMATELY A 2 FOOT
SPAN BETWEEN THE BACK OF THE VEHICLE AND THE FRONT OF MY
2012 TOYOTA PRIUS. TO THE RIGHT OF THE PARKED VEHICLE WAS A
PARKED TRUCK. BEING THAT I WAS PULLING INTO A SPACE TO
PARK MY VEHICLE, I WAS TRAVELING EXTREMELY SLOWLY. I
BEGAN TO PRESS ON MY BRAKE TO PARK THE VEHICLE AND
INSTANTLY KNEW THERE WAS A PROBLEM. UPON DEPRESSING THE
BRAKE, SEVERAL LIGHTS BEGAN TO FLASH WITHIN THE DASH TO
INCLUDE BUT NOT LIMITED TO THE ABS, WARNING LIGHT, AND THE
LIGHT WITH VEHICLE SWERVE LINES. OTHER LIGHTS WERE ALSO
FLASHING, BUT I DO NOT RECALL EACH ONE. THE BRAKE PAD
INSTANTLY WENT STRAIGHT TO THE FLOOR WITH NO PRESSURE.
THE VEHICLE WOULD NOT STOP AND CONTINUED TO TRAVEL
FORWARD WITH ACCELERATION. TO AVOID HITTING THE VEHICLE
IN FRONT OF ME I BEGAN TO TURN MY WHEEL TO THE RIGHT. THE
VEHICLE CONTINUED TO ACCELERATE AND CAME INTO CONTACT
WITH THE TRUCK THAT WAS TO MY FRONT-RIGHT. MY PRIUS
FAILED TO SLOW OR STOP. IT CONTINUED TO ACCELERATE AND
BEGAN PUSHING THE TRUCK UP THE DRIVEWAY AND INTO THE
METAL GARAGE DOOR WITH THE BRAKE PEDAL BEING DEPRESSED
THE ENTIRE TIME. EVENTUALLY, THE CAR CAME TO A STOP AND
THE LIGHTS CONTINUED TO FLASH PRIOR, DURING, AND AFTER THE
INCIDENT. AFTER THE CAR WAS TOWED TREAD WHEEL MARKS

- 22 -

WERE FOUND ON THE DRIVEWAY WHERE THE WHEELS SPUN AND
LEFT AN IMPRINT IN THE ASPHALT. I AND MY CHILDREN WERE
UNINJURED HOWEVER, THE INCIDENT WAS INCREDIBLY
TRAUMATIC. THE VEHICLE WAS DEEMED A TOTAL LOSS BY MY
INSURANCE COMPANY AND AS OF YET TO BE PROCESSED FOR
DIAGNOSTIC TESTING BY TOYOTA. THE TOYOTA CARE SERVICE
WAS INFORMED OF THE ACCIDENT. TOYOTA BELIEVES IT TO BE
ASSOCIATED WITH THE INTELLIGENCE COMPONENT OF THE
VEHICLE, HOWEVER DETERMINATION IS CURRENTLY UNKNOWN
UNTIL DIAGNOSTIC IS PERFORMED.

NHTSA ID Number: 11044156
Incident Date November 4, 2017
Consumer Location BENSALEM, PA
Vehicle Identification Number JTDZN3EU2C3****
2012 Toyota Prius V
NOVEMBER 4, 2017 - CAR WAS PARKED IN OUR DRIVEWAY. PUT THE
CAR IN REVERSE TO BACK OUT OF OUR DRIVEWAY. THE BRAKES
FAILED. NO MATTER HOW MANY TIMES THE BRAKE PEDAL WAS
REPEATEDLY PUSHED DOWN, THE CAR JUST WOULD NOT STOP. IT
ACTUALLY FELT LIKE THE CAR WAS ACCELERATING! THE CAR RAN
OVER OUR MAILBOX AT THE END OF OUR DRIVEWAY. THE
MAILBOX GOT DRAGGED UNDER THE CAR AND THE CAR ROLLED
OUT ONTO THE STREET. FINALLY, WE PUSHED IN THE POWER
BUTTON AND THAT WAS HOW WE WERE ABLE TO GET THE CAR TO
STOP. OUR MAILBOX GOT TOTALED AND DAMAGE WAS DONE TO
THE UNDERCARRIAGE OF OUR CAR, AS THERE IS TWISTED METAL
HANGING DOWN SCRAPING THE GROUND. THE BRAKES STARTED TO
WORK AGAIN A FEW MINUTES LATER, AS I WAS ABLE TO PULL IT
BACK INTO THE DRIVEWAY OFF OF THE STREET. ON SEPTEMBER 19,
2017 – CAR WAS PARKED IN A PARKING LOT. WHEN REVERSING OUT
OF THE PARKING SPACE, THE BRAKES DID NOT WORK. AFTER
REPEATEDLY PUMPING THE BRAKES, THEY FINALLY ENGAGED JUST
BEFORE IT HIT A CAR PARKED BEHIND US. WE THOUGHT THIS WAS
A FREAK ONE-TYPE EVENT, SO WE DIDN'T REPORT IT.

NHTSA ID Number: 11090508
Incident Date April 26, 2018
Consumer Location Unknown
Vehicle Identification Number 4T1BD1FK5CU****
2012 Toyota Camry Hybrid
TL* THE CONTACT OWNS A 2012 TOYOTA CAMRY HYBRID. WHILE
DRIVING 20 MPH, THE BRAKES MALFUNCTIONED. THE CONTACT
ATTEMPTED TO MAKE A SUDDEN STOP BY DEPRESSING THE BRAKE
PEDAL, BUT THE VEHICLE WOULD NOT STOP. AS A RESULT, THE
CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR
BAGS DID NOT DEPLOY. A POLICE REPORT WAS NOT FILED. THE

CONTACT SPRAINED HER RIGHT ANKLE FROM THE PRESSURE OF
DEPRESSING THE BRAKE PEDAL CONTINUALLY. MEDICAL
ATTENTION WAS REQUIRED. THE VEHICLE WAS TOWED TO NORTH
HOLLYWOOD TOYOTA IN NORTH HOLLYWOOD, CALIFORNIA TO
HAVE THE DAMAGES ASSESSED. IT HAD NOT BEEN DETERMINED
YET WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE
MANUFACTURER WAS NOTIFIED AND PROVIDED THE CONTACT
WITH CLAIM NUMBER: 180-427-0700. THE FAILURE MILEAGE WAS
APPROXIMATELY 65,000.

NHTSA ID Number: 11102264
Incident Date June 16, 2018
Consumer Location WILMINGTON, NC
Vehicle Identification Number JTDZN3EU2C3**** 2012 Prius V
WHILE PULLING INTO A PARKING SPACE (SPEED LESS THAN 5 MPH)
AND APPLYING THE BRAKES THE PEDAL WENT TO THE FLOOR AND
THE CAR SEEMED TO SPEED UP. THE CAR JUMPED THE CURB AND
STRUCK A TREE. A GOOD SAMARITAN ASSISTED AND ACTUALLY
GOT IN THE CAR AND FOUND THE BRAKE PEDAL WENT TO THE
FLOOR. SHORTLY AFTER THE ACCIDENT THE BRAKES RETURNED TO
NORMAL OPERATION. THIS IS THE SECOND TIME THAT THE CAR HAS
EXPERIENCED SIMILAR PROBLEMS. IN 2014 WHILE PULLING INTO
THE DRIVEWAY THE BRAKE PEDAL WENT TO THE FLOOR AND
STRUCK THE HOUSE. SHORTLY AFTER THE BRAKES RETURNED TO
NORMAL OPERATIONS. TOYOTA WAS NOTIFIED AND INSPECTED THE
CAR'S COMPUTER AND BRAKING SYSTEM PER CASE NUMBER
1410012557. AFTER THE INSPECTION TOYOTA SAID THAT THERE
WERE NO BRAKE ISSUES FOUND WITH THE CAR AND STATED THAT
IT WAS SAFE TO DRIVE. OBVIOUSLY THERE IS AN ISSUE WITH THE
BRAKING SYSTEM IN THESE CARS.

NHTSA ID Number: 11144698
Incident Date October 28, 2018
Consumer Location SULLIVAN, IN
Vehicle Identification Number JTDKN3DU4C1****
2012 Toyota Prius
I WAS TRAVELING NORTH ON THE HIGHWAY. I WAS GOING
BETWEEN 50 AND 55 MPH WHEN THE TRAFFIC LIGHT TURNED TO
YELLOW AND THEN TO RED. WHEN I APPLIED THE BREAKS
NOTHING HAPPENED. MY VEHICLE ACTUALLY APPEARED TO SPEED
UP. I RELEASED THE BRAKE THEN PUMPED THE BREAK TWICE THEN
AGAIN APPLIED THE BREAK, THIS TIME STOMPING HARDER AND
WITH BOTH FEET. MY VEHICLE DID NOT STOP OR EVEN SLOW. I
WENT THROUGH THE LIGHT, RESULTING IN A CAR ACCIDENT. I T
BONED ANOTHER CAR.

NHTSA ID Number: 11151142
Incident Date November 12, 2018
Consumer Location NORTH CHARLESTON, SC
Vehicle Identification Number JTDKN3DU0E1****
2014 Toyota Prius
THE CAR BRAKES FAILED AT LOW SPEEDS (10-15 MPH) AND BUMPED
INTO THE CAR IN FRONT IN A STOP-AND-GO TRAFFIC ON THE WET
FREEWAY AFTER A RECENT RAIN. THE BRAKE PEDAL WENT ALL
THE WAY DOWN TO TOUCH THE FLOOR, AS IF THE BRAKE PEDAL
WAS DISENGAGED FROM THE BRAKING SYSTEM AND THE ABS
LIGHT DID NOT TURN ON AT THE TIME OF BRAKING. THE CAR WAS
DRIVING IN THE STRAIGHT LINE AND IMMEDIATELY BEFORE THIS I
WAS ABLE TO SUCCESSFULLY BRAKE THE CAR ON THE VERY SAME
TRIP. SO THE PROBLEM IS INTERMITTENT. THIS IS THE SECOND TIME
WITH THIS CAR, AS MY SPOUSE ALSO EXPERIENCED THE SIMILAR
BRAKE FAILURE AT EVEN LOWER SPEEDS (<10 MPH) RESULTING IN
TOUCHING THE CAR IN FRONT AND MINOR SCRATCH ON THE
BUMPER. IT WAS A DRY DAY THEN AND ALMOST SIMILAR
CIRCUMSTANCES. ASSOCIATED GEICO CLAIM NUMBER IS
0423477190101054. WE OPENED A CASE WITH TOYOTA TO CHECK THE
DATA RECORDER. ASSOCIATED TOYOTA CASE NUMBER IS 181112370.

NHTSA ID Number: 11154835
Incident Date November 21, 2018
Consumer Location SANTA CLARITA, CA
Vehicle Identification Number JTDKN3DU4E0****
2014 Toyota Prius
BRAKES COMPLETELY FAILED AND I REAR ENDED A CAR. I WAS
STOPPING NORMALLY ON A CITY STREET. ACCORDING TO
DASHCAM I WAS TRAVELING AT ABOUT 25MPH. THE CAR SLOWED
TO ABOUT 12MPH WHEN THE BRAKES WENT DOWN TO THE FLOOR
AND THE CAR ACCELERATED.

NHTSA ID Number: 11154783
Incident Date November 29, 2018
Consumer Location OXFORD, GA
Vehicle Identification Number JTDKN3DU1B0****
2011 Toyota Prius
DRIVING VEHICLE DOWN HIGHWAY, TAPPED BRAKES BUT BRAKES
DID NOT WORK, ALL THE LIGHTS ON MY DASH LIT UP. I LOST
TRACTION IN BRAKES CAUSING VEHICLE TO LOSE CONTROL.

NHTSA ID Number: 11235210
Incident Date July 26, 2019
Consumer Location CLEARWATER, FL
Vehicle Identification Number JTDZN3UXC31****
2012 Toyota Prius V

- 25 -

COMPLETE BRAKE FAILURE ON THE FREEWAY!!! ABS, BRAKE AND TRACTION CONTROL LIGHTS LIT UP. ALMOST CRASHED! CODE C1391-ABNORMAL LEAK IN BRAKE ACTUATOR PUMP. HOW LONG WILL IT TAKE THIS AGENCY TO MAKE TOYOTA FIX THIS?? ITS A SAFETY ISSUE!!! STOP PICKING YOUR ASSES AND DO SOMETHING ABOUT IT!!!!

NHTSA ID Number: 11243249
Incident Date August 7, 2019
Consumer Location ENNIS, TX
Vehicle Identification Number N/A
2013 Toyota Prius
TL* THE CONTACT OWNED A 2013 TOYOTA PRIUS. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 10 MPH, THE DRIVER PRESSED THE BRAKE PEDAL TO STOP THE VEHICLE BUT THE VEHICLE ACCELERATED FORWARD AND CRASHED INTO A SECOND VEHICLE. DURING THE CRASH THE DRIVER SUSTAINED MULTIPLE CONTUSIONS TO THE BODY INCLUDING THE CHEST AREA WHICH REQUIRED MEDICAL TREATMENT. THE VEHICLE WAS DESTROYED AND TOWED AWAY. A POLICE REPORT #159681-2019 WAS TAKEN AT THE SCENE. THE LOCAL DEALER TOYOTA OF RICHARDSON (1221 N. CENTRAL EXPY. RICHARDSON TX.) THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 120,000.

NHTSA ID Number: 11267321
Incident Date October 8, 2019
Consumer Location SAN FRANCISCO, CA
Vehicle Identification Number JTDKN3DU3B1****
2011 Toyota Prius
AFTER APPLYING BRAKES CAR CONTINUED TO MOVE FORWARD THROUGH GARAGE OPENING CRASHING INTO WALL AT END OF GARAGE BEFORE IT STOPPED. BRAKE WAS NOT SLOWING/STOPPING VEHICLE

NHTSA ID Number: 11271144
Incident Date October 10, 2019
Consumer Location TALLAHASSEE, FL
Vehicle Identification Number JTDZN3EU6C3****
2012 Toyota Prius V
MY 2012 PRIUS V IS ONLY 90K MILES. STARTING FROM ABOUT 2 WEEKS AGO, THE WARNING LIGHTS INCLUDING BRAKE SYSTEM WARNING LIGHT, ABS WARNING LIGHT AND SLIP INDICATOR LIGHT WERE SUDDENLY LIT ON WHEN I WAS DRIVING, THEN I FOUND THE REGENERATE BRAKE BECOME VERY HARD AND DIFFICULT TO STOP WHICH WAS MALFUNCTIONING. THESE WARNING LIGHTS WERE KEPT ON ALL THE TIME WHEN I DRIVE THE CAR. THE CAR THREW

OUT CODE C1391 WHEN GIVEN A DIAGNOSIS. AFTER SOME ONLINE
WORK, I FOUND THIS IS A VERY COMMON PROBLEM FOR PRIUS V. I
WENT TO THE DEALERSHIP HOWEVER THE DEALERSHIP STATES
THAT MY CAR, BASED ON ITS VIN, IS NOT IN ONE OF THE CERTAIN
CARS COVERED BY ZJB PHASE 2 WHICH COVERS BRAKE BOOSTER
AND BRAKE BOOSTER PUMP ASSEMBLIES FOR CERTAIN 2011-2015
MODEL YEAR PRIUS VEHICLES. THE FAILURE OF THE BRAKE COULD
BE A DEADLY DEFICIENCY TO ALL THE PEOPLE IN THE CAR WHEN
DRIVING. NOW I HAVE TO THINK TO STOP USING THIS CAR BECAUSE
OF THE SEVERE SECURITY RISK. TOYOTA SHOULD TAKE ACTION TO
SOLVE ALL THIS PROBLEM FOR ALL INVOLVED CARS, NOT CERTAIN
CARS. MY CAR IS MADE IN 2012, THE DIAGNOSIS CODE C1391 GIVEN
BY MY CAR ARE FALLING INTO ONE OF THE FOUR CODES
ASSOCIATED WITH THE BRAKE PROBLEM COVERED BY ZJB PHASE 2.
IT IS RIDICULOUS THAT MY CAR WAS NOT ISSUED THIS EXTENDED
WARRANTY.

NHTSA ID Number: 11280476
Incident Date November 6, 2019
Consumer Location FALLS CHURCH, VA
Vehicle Identification Number JTDZN3EU6C3****
2012 Prius V
THE BRAKE LOSES ITS GRIP OVER A ROUGH ROAD BUMP WHILE
PULLING IN FOR A STOP. VERY VERY NOT SAFE, I ALMOST REAR
ENDED A CAR IN FRONT OF ME A COUPLE OF TIMES. CREATES
EXTREMELY UNSAFE FEELING. BRAKE LOSS HAPPENS ALL THE TIME
OVER BUMPY ROAD ONLY.

NHTSA ID Number: 11286843
Incident Date November 15, 2019
Consumer Location HONOLULU, HI
Vehicle Identification Number JTDZN3EU8C3****
2012 Toyota Prius V
ORIGINALLY THE CAR SHOWED BRAKE, ABS, ANTISKID AND ENGINE
IDIOT LIGHTS WENT TO THE DEALER WITH A CODE C1391. THEY
SAID I NEED TO REPLACE THE MASTER CYLINDER AND THE POWER
BOOSTER FOR $2600. THEN THEY SAID IT WAS POLICY TO ALSO
REPLACE THE BRAKE BOOSTER PUMP ASSEMBLY FOR AN
ADDITIONAL $2,000 OR A TOTAL OF $4600. AFTER I COMPLAINED
THAT THEY HAD RECALLED 972,000 OTHER PRIUS BUT DIDN'T
INCLUDE THE PRIUS V THEY SAID I ONLY NEEDED TO REPLACE THE
MASTER CYLINDER AND POWER BOOSTER AND SAID THEY WOULD
DO IT FOR $1,516.89. SO THEN I GO TO TAKE THE CAR TO THE
SERVICE DEPARTMENT TODAY 12/4/19 AND WHILE SITTING THERE
THE IDIOT LIGHTS ALL TURN OFF AND THE BRAKE START TO
FUNCTION NORMALLY OWN ITS OWN... I ASK THE SERVICE
REPRESENTATIVE WHAT HIS THOUGHTS WERE AND HE SAID I

- 27 -

SHOULD STILL MAKE THE REPAIRS, BUT HE COULDN'T SAY WHAT
THEY WOULD DO IT CAME BACK. SO I'M GOING TO DRIVE THE CAR
FOR A WEEK TO SEE. WHILE I'M WAITING CAN YOU PLEASE DO A
RECALL ON THE BRAKE PUMP ASSEMEBLY SINCE THESE FOLKS
DONT EVEN KNOW WHAT THE HECK IS GOING ON WITH THIS CAR. IT
APPEARS ITS NOT EITHER DEVICE AND ITS A COMPUTER GLITCH
THAT THEY HAVEN'T RESOLVED...HELP US PRIUS OWNERS PLEASE!!!

35.     The above complaints are just a small subset of the hundreds of complaints submitted to NHTSA for brake failures in the Affected Vehicles, which all tell the same central story of drivers depressing the brake pedals but getting no brake response. The safety implications are obvious, as illustrated by the dozens of accidents described above and the hundreds of accidents reported to NHTSA.

36.     It cannot reasonably be questioned that Toyota is now, and was long before it first began selling Affected Vehicles, fully aware of the brake defect in the Affected Vehicles. Toyota has acquired that knowledge through at least: (1) NHTSA complaints; (2) warranty claims; (3) non-warranty repair records; (4) testing it claims to undertake in the development of new models; (5) customer complaints to Toyota and its dealers; and (6) the unprecedented 15-year history of its unsuccessful attempts to make the braking systems in its hybrid vehicles operate safely.

37.     Like all vehicle manufacturers, Toyota monitors consumer reports and sentiments about its products that appear on social media, blogs, review sites, enthusiast sites and other internet resources. Toyota has toll-free numbers and email and other communication systems that are devoted to obtaining information (and complaints) from consumers about their products. Toyota has certainly received numerous complaints about the brake defect in Affected Vehicles, as evidence, in part, by the NHTSA complaints that expressly indicate contact with Toyota directly and its dealers.

38.     Toyota also receives technical information and reports from its dealers and service centers concerning warranty repairs, requests for warranty coverage and safety

- 28 -

complaints from vehicle owners. In fact, one dealer in California, after observing and reporting years of hybrid braking complaints to Toyota, has expressly requested a NHTSA investigation into Toyota's handling of the brake defect in Affected Vehicles and Toyota's failure to adequately address the issue and provide a necessary safety recall.

39.    Roger Hogan, who owns Toyota dealerships in Claremont, California and San Juan Capistrano, California has a history of taking on Toyota to ensure that he does not unwittingly assist Toyota in providing unsafe cars to consumers. In 2011, he developed his own safety recall system to ensure that his customers' cars were always up to date on repairs and recalls. Then in 2017, he publicly complained that the electronic drive system in the Third Generation Prius was unsafe and a 2014 recall did not remedy the defects. He later sued Toyota, alleging that it retaliated against his business because of his efforts to make Toyota tow the line on safety. In July 2019, an Orange County, California jury awarded Mr. Hogan's dealerships $15.8 million in damages, finding that Toyota had breached its contractual obligation of good faith and fair dealing.[6]

40.    On September 19, 2019, Mr. Hogan petitioned NHTSA to order a safety recall of the approximately one million Affected Vehicles in the United States at issue in this lawsuit as a result of the braking defect, which he described as a "dangerous safety defect" in the "brake booster pump assemblies with the master cylinder." Mr. Hogan stated: "This brake defect is causing crashes that are injuring people—and Toyota is mishandling it."[7]

41.    On December 13, 2019, Mr. Hogan submitted an addendum to his petition in which he linked the braking defect to a 2014 accident where a 2013 Toyota Prius plowed into

---

[6] *See, e.g.,* https://www.latimes.com/local/california/la-fi-toyota-prius-verdict-20190715-story.html.

[7] *See, e.g.,* https://thebrakereport.com/brake-issue-leads-to-review-of-some-toyota-hybrids/.

three teens in North Hollywood, California, resulting in serious injuries. The driver, who was in a rented vehicle, reported that the brakes failed to operate.

42.    On September 30, 2019, NHTSA launched an investigation into the braking defect and in October 2019, it requested information about the Affected Vehicles from Toyota.[8] NHTSA has stated: "NHTSA is reviewing a defect petition concerning valve wear in the brakes of certain model year 2010-2015 Toyota Prius/Camry HV/Avalon HV vehicles….The agency will thoroughly examine the petition and corresponding data to determine if there is evidence of a safety-related defect."[9]

43.    Mr. Hogan's NHTSA petition states that while Toyota has issued at least two very limited safety recalls relating to the brake components at issue, Toyota has "put innocent lives at risk by knowingly excluding hundreds of thousands of hybrids with defective brakes..."[10]

44.    And Mr. Hogan is exactly right. Toyota's callous response to the hundreds of documented accidents and other complaints about the brake defect in Affected Vehicles have put the drivers and passengers of Affected Vehicles—and the public at large as demonstrated by the accident described in Mr. Hogan's petition—at risk of serious injury and death. A fully operational and dependable braking system is a basic element of a safely operating vehicle.

45.    Mr. Hogan's petition explained that Toyota investigated the braking defect from May 2010-October 2011. Toyota determined that one potential cause of the cracking was that "location of the weld points . . . could create a tendency for cracks to develop near the weld points." After additional testing, Toyota abandoned that explanation, ultimately concluding that

---

[8] *See id.*

[9] *See id.*

[10] *See id.*

"some accumulators experienced larger impact forces despite the same test conditions." Toyota observed "variation in the amount of clearance between the metal housing and the bellows." After additional testing, Toyota determined that "if the amount of clearance is large, large impact forces may be exerted onto the metal bellows, which could result in gradual damage to the bellows."

46.    No owner or lessee of an Affected Vehicle would have purchased their vehicle, or at least would have paid less for their Affected Vehicle, had they known that the braking system might unexpectedly fail, or had they known that Toyota would only agree to fix a defect in the brakes after they failed instead of in advance to prevent such failure from ever occurring.

47.    As a result of the brake defect in Affected Vehicles and the costs of repairs required to ameliorate it, Plaintiff and all owners of Affected Vehicles (the "Class") have suffered injury in fact, incurred damages, and have suffered harm as a result of Toyota's acts and omissions. Plaintiff and Class members seek remedies under the consumer protection statutes of the states in which they reside and/or purchased their Affected Vehicles, and also seek recovery for Toyota's breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and fraudulent concealment.

48.    Plaintiff and each Class member suffered injury as they purchased their Affected Vehicle under the express and implied warranties that their vehicles would operate safely throughout the useful life of such vehicles. A vehicle containing the braking defect does not operate as warranted and for its intended purpose because it does not operate safely or reliably. In addition, an Affected Vehicle is worth less than a correctly operating/non-faulty Affected Vehicle.

3cbcc50b0a9f4f26

C.    **Toyota Has Manipulated Its Warranty To Minimize Its Obligation To Fix the Braking Defect In Affected Vehicles**

49.    In connection with the sale of new vehicles, including the Affected Vehicles, Toyota provides a Limited New Vehicle Warranty ("LNVW") for the lesser of three years or 36,000 miles.

50.    Under the caption "Basic Warranty," the LNVW states:

> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" on pages 14-15.

> Coverage is for 36 months or 36,000 miles, whichever occurs first, with the exception of wheel alignment and wheel balancing, which are covered for 12 months or 20,000 miles, whichever occurs first.

51.    In order to obtain repairs under the LNVW, owners and lessees of covered vehicles are told by Toyota to present their vehicles to certified Toyota service centers, which are generally housed at Toyota dealerships.

52.    Toyota is not honoring the plain language of its warranty agreement. Even when owners of Affected Vehicles have presented their cars to Toyota service centers and complained of braking issues, Toyota has: (1) failed to notify them of the braking defect in their Affected Vehicles; and (2) refused to repair the braking defect until and unless a particular fault sensor in the vehicle registers a particular DTC code. Likewise, Affected Vehicle owners who do not complain of braking issues are never informed of the braking defect in Affected Vehicles, and are never offered a repair.

53.    In what can only be construed as an admission of the braking defect, in August 2018, Toyota issued a Customer Support Program ("CSP") covering the 2010-15 Prius and Prius PHV (Plug-In Hybrid), which are both Affected Vehicles. For these vehicles, under CSP "ZJB", if an Affected Vehicle owner presented their car at a Toyota service center and a braking failure

- 32 -

actually occurred and was stored in the vehicle on-board computer as one of four DTC codes, then, *and only then*, Toyota instructed its dealers to replace the brake booster and brake booster pump at no charge to the Affected Vehicle owner. This program continues in force for 2011-15 Prius and 2012-15 Prius HPV, but has already been terminated (as of November 30, 2019) for the 2010 Prius and Prius HPV.

54.    The repair authorized in CSP ZJB replaces the originally installed brake booster and brake booster pump with new and different part numbers, which further evidences Toyota's determination that the originally installed parts are faulty and were defective. In a blatantly unfair and dangerous ploy to minimize its warranty-related costs, however, if one of the four DTC codes specified in ZJB are not stored in the computer, Toyota will not replace the defective brake booster and brake booster pump, *even if the Affected Vehicle owner has complained of braking issues*. Instead, Affected Vehicle owners are instructed to continue driving their Affected Vehicles and to return for service only if their brakes actually fail to operate.

55.    In 2019, Toyota initiated the same warranty-avoidance scheme with its 2012-14 Camry Hybrid and 2013-15 Avalon Hybrid, which are also Affected Vehicles. For these cars, Toyota issued CSP "ZKK", under which it again instructed service centers to replace the brake booster and brake booster pump in Affected Vehicles, but again *only if* one of the four specified DTC codes had been stored in the car's onboard computer. And Toyota would not even cover the cost of determining whether the DTC codes were actually present in a vehicle. Instead, it warned Affected Vehicle owners that if they chose to have a dealer check to see if the DTC codes were present, and they were not, the owners would be charged for the cost to perform the diagnostic test.

- 33 -

56.     Further, Toyota's obvious attempts to discourage Affected Vehicle owners from even testing for the presence of the DTC codes was also extended to the dealers themselves. Toyota warned them that if they attempted to "direct market" the CSP to their own customers, then Toyota "may" refuse to pay for the repair service performed, even if the required DTC codes were present in the car's onboard computer.

57.     The ZJB and ZKK CSPs cover some 1,120,400 Affected Vehicles. That is, there are at least that many Affected Vehicles in the U.S. that have defective brake boosters and brake booster pumps that Toyota has admitted should be replaced, but that it will not replace until and unless the operators of these Affected Vehicles actually experience a brake system failure that registers on the car's onboard computer. Discovery may show that there are even more Affected Vehicles out there with defective brake systems that are simply waiting to fail, which could result in serious injury or death to vehicle occupants and innocent bystanders.

## VI.     TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule Tolling

58.     Class members had no way of knowing about Toyota's deception with respect to the braking defect in the Affected Vehicles.

59.     Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Toyota was concealing the brake defect in Affected Vehicles and misrepresenting the safety, quality and reliability of the Affected Vehicles.

60.     Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Toyota did not report information within their knowledge to federal and state authorities, the dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Toyota had concealed information

- 34 -

about the true nature of the defective brake systems in the Affected Vehicles, which was discovered by Plaintiff only shortly before this action was filed. Nor, in any event, would such an investigation on the part of Plaintiff and other Class members have disclosed that Toyota valued profits over the safety of its customers, their friends and family and innocent bystanders.

61.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted herein.

**B.     Fraudulent Concealment Tolling**

62.     All applicable statutes of limitation have also been tolled by the Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

63.     Instead of disclosing the existence of the braking defect, Toyota falsely represented that the Affected Vehicles were safe, dependable, reliable and of high quality.

**C.     Estoppel**

64.     The Defendants were under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the braking systems in the Affected Vehicles.

65.     The Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the braking systems in the Affected Vehicles.

66.     Based on the foregoing, the Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.    CLASS ALLEGATIONS

67.    Plaintiff brings this action on behalf of herself and as a class action pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who owned and/or leased an Affected Vehicle.

**The Ohio Subclass**

All persons or entities in the state of Ohio who owned and/or leased an Affected Vehicle.

68.    Excluded from the Class are individuals who have personal injury claims resulting from the braking systems in the Affected Vehicles. Also excluded from the Class are the Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

69.    Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

70.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

71.    **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes—based on publicly available sales data for Affected Vehicles—that there are millions of members of the Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from the Defendants'

- 36 -

books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

72. **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.  Whether the Defendants engaged in the conduct alleged herein;

b.  Whether the Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c.  Whether the Affected Vehicles contain a defect in their braking system and if so, whether it is a safety defect;

d.  Whether the Defendants knew about the defect in the braking system of Affected Vehicles and, if so, how long the Defendants have known;

e.  When the Defendants discovered the braking defect in the Affected Vehicles, and what, if anything, they did in response;

f.  Whether Defendants have sought to minimize their warranty expenses by refusing to repair the braking defect in the vast majority of Affected Vehicles;

g.  Whether the Defendants' conduct violates consumer protection statutes and constitutes breach of contract and fraudulent concealment as asserted herein;

h.  Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i.      Whether Plaintiff experienced out-of-pocket losses from replacing parts as a result
of the braking defect, and if so, how much; and

j.      Whether Plaintiff and the other Class members are entitled to damages and other
monetary relief and, if so, in what amount.

73.    **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical
of the other Class members' claims because, among other things, all Class members were
comparably injured through the Defendants' wrongful conduct as described above.

74.    **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate
Class representative because her interests do not conflict with the interests of the other members
of the Classes she seeks to represent; Plaintiff has retained counsel competent and experienced in
complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The
Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

75.    **Declaratory Relief**: Federal Rule of Civil Procedure 23(b)(2): the Defendants
have acted or refused to act on grounds generally applicable to Plaintiff and the other members
of the Classes, thereby making appropriate declaratory relief, with respect to each Class as a
whole.

76.    **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior
to any other available means for the fair and efficient adjudication of this controversy and no
unusual difficulties are likely to be encountered in the management of this class action. The
damages or other financial detriment suffered by Plaintiff and the other Class members are
relatively small compared to the burden and expense that would be required to individually
litigate their claims against the Defendants, so it would be impracticable for the members of the
Classes to individually seek redress for the Defendants' wrongful conduct. Even if Class

- 38 -

members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**A.    Claims Brought on Behalf of the Nationwide Class**

**COUNT I**

**VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.***
**THE MAGNUSON-MOSS WARRANTY ACT**

77.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

78.    This claim is brought on behalf of the Nationwide Class.

79.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

80.    Toyota is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

81.    The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

82.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

83.    Toyota's LNCW is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Affected Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

- 39 -

84.     Toyota breached these warranties, as described in more detail above. Without limitation, the Affected Vehicles are equipped with a defective braking system that fails to function over the long term, and can cause complete brake failure, leading to vehicle accidents and collisions. The Affected Vehicles share a common design defect in that the brake system fails to operate as represented by Toyota.

85.     Plaintiff and the other Class members have had sufficient direct dealings with either Toyota or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between Toyota on one hand, and Plaintiff and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers, and specifically, of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

86.     Affording Toyota a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

87.     At the time of sale or lease of each Affected Vehicle, Toyota knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Affected Vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Toyota a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

- 40 -

88.     Plaintiff and the other Class members would suffer economic hardship if they returned their Affected Vehicles but did not receive the return of all payments made by them. Because Toyota is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Affected Vehicles by retaining them.

89.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

90.     Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of the Affected Vehicles, in an amount to be proven at trial.

**B.      Claims Brought on Behalf of the Ohio Subclass**

### COUNT II

### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE § 1345.01, *ET SEQ.*)

91.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

92.     This claim is brought on behalf of the Ohio Subclass.

93.     Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, OHIO REV. CODE § 1345.01 ("Ohio CSPA"). Each of the Defendants is a "supplier" as defined by the Ohio CSPA. Plaintiff's and the other Ohio Subclass members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the Ohio CSPA.

- 41 -

94.     The Ohio CSPA, OHIO REV. CODE § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade if they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. *Id.* The Defendants' conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

95.     In the course of the Defendants' business, they willfully failed to disclose and actively concealed that the braking system in the Affected Vehicles is defective, and that the Affected Vehicles' brakes may fail to operate under normal driving conditions, as described above. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

96.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by the Defendants' failure to disclose that the braking system in the Affected Vehicles is defective, as described above.

97.     Plaintiff and Subclass members reasonably relied upon the Defendants' false representations. They had no way of knowing that the Defendants' representations were false and gravely misleading. As alleged herein, the Defendants engaged in extremely sophisticated methods of deception. Plaintiff and Subclass members did not, and could not, unravel Defendants' deception on their own.

98.     The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

99.     The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

100.    The Defendants intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Subclass.

101.    The Defendants knew or should have known that their conduct violated the Ohio CSPA.

102.    The Defendants owed Plaintiff and the Subclass a duty to disclose the truth about their defective braking system because the Defendants:

a.      Possessed exclusive knowledge regarding the braking system defect, and intentionally concealed the foregoing from Plaintiff and the Subclass;

b.      Made incomplete representations regarding vehicle safety, reliability and quality, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations; and

- 43 -

      c.      Made incomplete representations regarding the safety, reliability and quality of the Affected Vehicles, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

103.    The Defendants had a duty to disclose that the braking system in the Affected Vehicles is defective, as described above, because Plaintiff and the other Subclass members relied on the Defendants' material representations that the Affected Vehicles they were purchasing were safe, reliable, of high quality, and free of defects.

104.    The Defendants' conduct proximately caused injuries to Plaintiff and the other Subclass members.

105.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendants' conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions.

106.    The Defendants' violations present a continuing risk to Plaintiff as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

107.    Plaintiff and the Subclass sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the Ohio CSPA.

108.    Plaintiff also seeks court costs and attorneys' fees as a result of Defendants' violations of the Ohio CSPA as provided in OHIO REV. CODE § 1345.09.

## COUNT III

## BREACH OF CONTRACT
## (BASED ON OHIO LAW)

109.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

110.    Plaintiff brings this Count on behalf of Ohio Subclass members.

111.    The Defendants' misrepresentations and omissions alleged herein, including, but not limited to, the existence of the braking system defect, as described above, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective braking system. Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

112.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Toyota and the purchaser or lessee. Toyota breached these contracts and/or the covenant of good faith and fair dealing that is an element of every Ohio contract by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the braking system is defective, as described above.

113.    As a direct and proximate result of Toyota's breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 45 -

## COUNT IV

## FRAUDULENT CONCEALMENT
### (BASED ON OHIO LAW)

114.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

115.    This claim is brought on behalf of the Ohio Subclass.

116.    The Defendants intentionally concealed that the braking system in the Affected Vehicles is defective, as described above, or the Defendants acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

117.    The Defendants further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles they were selling had no significant defects, were safe, reliable, of high quality, and would perform and operate properly when driven in normal usage.

118.    The Defendants knew these representations were false when made.

119.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, contained defective brake system components and may suffer a brake failure during normal driving operation.

120.    The Defendants had a duty to disclose that the braking system in the Affected Vehicles is defective, as described above, because Plaintiff and the other Subclass members reasonably relied on the Defendants' material representations that the Affected Vehicles they were purchasing were safe, dependable, of high quality, and free from defects.

- 46 -

121.    As alleged in this Complaint, at all relevant times, the Defendants have held out the Affected Vehicles to be safe, dependable, of high quality and free of safety defects. The Defendants disclosed certain details about safety, quality and reliability, but nonetheless, the Defendants intentionally failed to disclose important facts, including the existence of the braking system defect, that the braking system in the Affected Vehicles is defective, as described above, and that the brakes could fail to operate during normal driving, making other disclosures about the safety, reliability and high quality of the Affected Vehicles deceptive.

122.    The truth about the defective braking system, the defective brake booster and brake booster pump, and the danger of brake failure in the Affected Vehicles was known only to the Defendants; Plaintiff and the Subclass members did not know of these facts and the Defendants actively concealed these facts from Plaintiff and Subclass members.

123.    Plaintiff and Subclass members reasonably relied upon the Defendants' deception. They had no way of knowing that the Defendants' representations were false and/or misleading. As consumers, the Plaintiff and Subclass members did not, and could not, unravel the Defendants' deception on their own. Rather, the Defendants intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' faulty and defective braking system.

124.    The Defendants also concealed and suppressed material facts concerning what is evidently the true culture of the Defendants—a culture characterized by an emphasis on profits and sales above safety. Defendants also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in their representations. Consumers buy cars from the Defendants because they feel they are safe, dependable and of high quality. They do not want a car with

- 47 -

brakes that could fail at any time, without warning. And yet, that is precisely what is happening with the Affected Vehicles.

125.    The Defendants' false representations were material to consumers, because they concerned the quality, reliability and safety of the Affected Vehicles, and also because the representations played a significant role in the value of the Affected Vehicles. As the Defendants well knew, their customers, including Plaintiff and Subclass members, highly valued that the Affected Vehicles they were purchasing or leasing were safe, reliable and of high quality, and they paid accordingly.

126.    The Defendants had a duty to disclose the braking system defect because details of the true facts were known and/or accessible only to the Defendants, because the Defendants had exclusive knowledge as to such facts, and because the Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. The Defendants also had a duty to disclose because they made general affirmative representations about the qualities of the Affected Vehicles with respect to safety, reliability and high quality, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual safety, reliability and quality of the Affected Vehicles, and their actual practices with respect to the Affected Vehicles. Having volunteered to provide information to Plaintiff and Subclass members, the Defendants had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products are safe, reliable and of high quality, and whether that manufacturer tells the truth with respect to safety, reliability and high quality, are material concerns to a consumer. The Defendants represented to Plaintiff and Subclass members that they were

- 48 -

purchasing or leasing safe, reliable, high quality vehicles when, in fact, they were purchasing or leasing vehicles with defective braking systems, which could suffer brake failures under normal operating conditions.

127.    The Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect their profits and to avoid the perception that their Affected Vehicles were not safe, reliable and of high quality, which perception would hurt the brand's image and cost the Defendants money, and they did so at the expense of Plaintiff and Subclass members.

128.    The Defendants still have not made full and adequate disclosures, and they continue to defraud Plaintiff and Subclass members by concealing material information regarding the braking systems of the Affected Vehicles.

129.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly safe, reliable and high quality cars manufactured by the Defendants, and/or would not have continued to drive their Affected Vehicles that could suffer an unexpected brake failure, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. The Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

130.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own Affected Vehicles that are diminished in value as a result of the Defendants' concealment of the true safety, quality and reliability of the Affected Vehicles and the Defendants' failure to timely disclose the defect or defective design of

- 49 -

the braking system in Affected Vehicles, and the serious issues engendered by the Defendants'

corporate policies. Had Plaintiff and Subclass members been aware of the true safety facts with

regard to the Affected Vehicles, and the Defendants' disregard for the truth and the safety of

Affected Vehicles, Plaintiff and Subclass members who purchased or leased new or certified

previously owned Affected Vehicles would have paid less for their Affected Vehicles or would

not have purchased or leased them at all.

131.    The value of Plaintiff's and Subclass members' Affected Vehicles has diminished

as a result of the Defendants' fraudulent concealment of the defective braking system of the

Affected Vehicles, which has greatly tarnished the Defendants' brand name attached to

Plaintiff's and Subclass members' Affected Vehicles and made any reasonable consumer

reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have

been fair market value for the Affected Vehicles.

132.    Accordingly, the Defendants are liable to Plaintiff and Subclass members for

damages in an amount to be proven at trial.

133.    The Defendants' acts were done wantonly, maliciously, oppressively,

deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass

members' rights and the representations that the Defendants made to them, in order to enrich the

Defendants. The Defendants' conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to

proof.

## COUNT V

## UNJUST ENRICHMENT

134.    Plaintiff incorporates by reference all preceding allegations as though fully set

forth herein.

- 50 -

135.   Plaintiff brings this Count on behalf of herself and the Ohio Subclass.

136.   Toyota has received and retained a benefit from Plaintiff and inequity has resulted.

137.   Toyota has benefitted from selling and leasing defective cars at a profit, the value of which was artificially and fraudulently inflated. As a direct and proximate result of Toyota's concealment of the braking system defect, Plaintiff and the Class have overpaid for the cars and been forced to pay other costs.

138.   Thus, all Ohio Subclass members conferred a benefit on Toyota.

139.   Plaintiff and the Class were not aware of the true facts about the Class Affected Vehicles, and did not benefit from Toyota's conduct.

140.   Toyota knowingly accepted the benefits of their unjust conduct.

141.   As a result of Toyota's conduct, the amount of their unjust enrichment should be disgorged as to each defendant, in an amount according to proof.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclass, respectfully requests that the Court enter judgment in her favor and against the Defendants, as follows:

A.   Certification of the proposed Nationwide Class and State Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B.   Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

- 51 -

C.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

D.      An order requiring the Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: April 3, 2020                    Respectfully submitted,


                                        **MINNILLO & JENKINS Co., LPA**

                                        */s/ Christian A. Jenkins*
                                        Christian A. Jenkins (OH-0070674)
                                        2712 Observatory Avenue
                                        Cincinnati, Ohio 45208
                                        Tel:  (513) 723-1600
                                        Fax:  (513) 723-1620
                                        cjenkins@minnillojenkins.com

                                        Steve W. Berman
                                        Thomas E. Loeser
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        1301 Second Avenue, Suite 2000
                                        Seattle, Washington 98101
                                        Telephone: (206) 623-7292
                                        Facsimile: (206) 623-0594
                                        Email: steve@hbsslaw.com
                                        Email: toml@hbsslaw.com

                                        To be admitted *pro hac vice*

                                        ***Attorneys for Plaintiff and the
                                        Proposed Class***

010882-11/1252948 V1